1   TIFFANY CHEUNG (CA SBN 211497)
    TCheung@mofo.com
2   SABRINA LARSON (CA SBN 291661)
    SLarson@mofo.com
3   CLAIRE BONELLI (CA SBN 317735)
    CBonelli@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California  94105-2482
    Telephone:     (415) 268-7000
6   Facsimile:      (415) 268-7522

7   Attorneys for Defendant
    APPLE INC.

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                         OAKLAND DIVISION

12

13  CHRISTIAN SPONCHIADO and              Case No.    4:18-cv-07533-HSG
    COURTNEY DAVIS, on behalf of
14  themselves and all others similarly situated,    **DEFENDANT APPLE INC.'S**
                                          **NOTICE OF MOTION AND**
15                         Plaintiffs,    **MOTION TO DISMISS FIRST**
                                          **AMENDED COMPLAINT;**
16         v.                             **MEMORANDUM OF POINTS AND**
                                          **AUTHORITIES IN SUPPORT**
17  APPLE INC.,                           **THEREOF**

18                         Defendant.     Date:       October 3, 2019
                                          Time:       2:00 p.m.
19                                        Judge:      Hon. Haywood S. Gilliam, Jr.
                                          Ctrm:       2
20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on October 3, 2019, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, California, before the Honorable Haywood S. Gilliam, Jr., Defendant Apple Inc. ("Apple") will and hereby does move to dismiss plaintiffs Christian Sponchiado and Courtney Davis's (collectively, "Plaintiffs") claims for violations of California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*), Unfair Competition Law (Business and Professions Code § 17200, *et seq.*), and False Advertising Law (Business and Professions Code § 17500, *et seq.*), violations of the New York Deceptive Acts and Practices Act (N.Y. Gen. Bus. Law §§ 349-350, *et seq.*), and common law fraud.

This motion is made pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), on the grounds that Plaintiffs fail to state claims for which relief can be granted and fail to plead their fraud-based claims with the requisite particularity.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Request for Judicial Notice in Support of the Motion to Dismiss filed concurrently herewith, the Declaration of Tiffany Cheung in Support of the Motion to Dismiss Plaintiffs' First Amended Complaint filed concurrently herewith, all other pleadings and papers on file herewith, and such other argument and evidence as may be presented to the Court.

Dated: May 22, 2019                    MORRISON & FOERSTER LLP


                                       By:    */s/ Tiffany Cheung*
                                              TIFFANY CHEUNG

                                       Attorneys for Defendant
                                       APPLE INC.

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ....................................................... I

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF ISSUES TO BE DECIDED ..................................................... 2

III.    RELEVANT BACKGROUND ............................................................................. 2

IV.     LEGAL STANDARD ........................................................................................... 5

V.      ARGUMENT ....................................................................................................... 6

    A.   A Non-California Plaintiff Cannot Pursue Claims Under California Law. ........... 6

    B.   Plaintiffs Cannot Pursue State Law Claims For States in Which No Named Plaintiff Resides. ....................................................................................... 7

    C.   Plaintiffs Fail to Allege Facts Sufficient to Support Any of Their Fraud-Based Claims. .............................................................................................. 7

        1.   Plaintiffs Fail to Satisfy Rule 9(b)'s Particularity Requirements................. 7

        2.   Plaintiffs Fail to Plausibly Allege Either Deception or Reliance Regarding the Screen Size Representations. ............................................. 10

        3.   Plaintiffs' "False Pixel" Allegations Fail to State Either An Express Misrepresentation or an Omissions Claim. ............................................. 13

    D.   Plaintiffs' New York General Business Law Claims Fails. ................................ 16

VI.     CONCLUSION ................................................................................................... 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*A'lor Int'l Ltd. v. Tappers Fine Jewelry,*
5
    605 F. App'x 662 (9th Cir. 2015) ................................................................. 5 fn. 5

6

*Abraham v. Am. Home Mortg. Servicing, Inc.,*
7
    947 F. Supp. 2d 222 (E.D.N.Y. 2013) ......................................................... 17

8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................... 5

9

*Bell Atl. Corp. v. Twombly,*
10
    550 U.S. 544 (2007) ................................................................................... 5

11

*Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
    637 F.3d 1047 (9th Cir. 2011) ................................................................ 8, 10
12

13

*Clemens v. DaimlerChrysler Corp.,*
    534 F.3d 1017 (9th Cir. 2008) .................................................................... 5

14

*Cover v. Windsor Surry Co.,*
15
    No. 14-cv-05262-WHO, 2016 WL 520991 (N.D. Cal. Feb. 10, 2016) ...................... 7

16

*Dash v. Seagate Tech. (U.S.) Holdings, Inc.,*
    27 F. Supp. 3d 357 (E.D.N.Y.2014) .......................................................... 17
17

18

*Ebner v. Fresh, Inc.,*
    838 F.3d 958 (9th Cir. 2016 .................................................................... 11

19

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,*
20
    375 F.3d 168 (2d Cir. 2004) ...................................................................... 6

21

*Gale v. IBM Corp.,*
    9 A.D. 3d 446 (2d Dep't 2004) ................................................................. 17
22

*Goshen v. Mutual Life Ins. Co. of N.Y.,*
23
    98 N.Y.2d 314 (2002) .............................................................................. 17

24

*Granfield v. NVIDIA Corp.,*
25
    No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012) ......................... 7

26

*Hall v. Sea World Entm't, Inc.,*
    No. 15-660, 2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ................................ 15

27

*Haskins v. Symantec Corp.,*
28
    No. 13-cv-01834-JST, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) ....................... 10

*Herron v. Best Buy Co.*,
    924 F. Supp. 2d 1161 (E.D. Cal. Feb. 13, 2013)................................................................16

*Herskowitz v. Apple Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) .............................................................................8

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018)...........................................................................................15

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
    802 F. Supp. 2d 1070 (N.D. Cal. 2012) .............................................................................6

*In re iPhone 4s Consumer Litig.*,
    637 F. App'x 414 (9th Cir. 2016) ...................................................................................14

*In re NJOY Consumer Class Action Litig.*,
    No. CV 14-00428 MMM, 2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) .............................10

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ...................................................................................................10

*Johnson v. Nissan N. Am., Inc.*,
    272 F. Supp. 3d 1168 (N.D. Cal. 2017) .............................................................................7

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)......................................................................................6, 8

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) .........................................................................................11

*Lazar v. Superior Court*,
    12 Cal. 4th 631 (1996) ....................................................................................................6

*Maloney v. Verizon Internet Servs., Inc.*,
    413 F. App'x 997 (9th Cir. 2011) ...................................................................................13

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988)............................................................................................5

*McKenna v. WhisperText*,
    No. 5:14-cv-00424-PSG, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) .............9 fn. 6, 11 fn. 7

*Moore v. Apple, Inc.*,
    73 F. Supp. 3d 1191 (N.D. Cal. 2014) .............................................................................6

*Palmer v. Apple Inc.*,
    No. 5:15-cv-05808-RMW, 2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) ....................6, 8, 10

*Richardson v. Reliance Nat'l Indemn. Co.*,
    No. C 99-2952 CRB, 2000 WL 284211 (N.D. Cal. Mar. 9, 2000)...........................................9

*Royal Primo Corp. v. Whitewater W. Indus., Ltd.*,
   No. 15-cv-04391-JCS, 2016 WL 1718196 (N.D. Cal. Apr. 29, 2016) ...............9 fn. 6, 11 fn. 7

*Sands v. Ticketmaster-New York, Inc.*,
   207 A.D.2d 687, 616 N.Y.S.2d 362 (1st Dep't 1994) ...........................................17

*Spagnola v. Chubb Corp.*,
   574 F.3d 64 (2d Cir. 2009)....................................................................................17

*T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,
   No. 14-cv-05318-JSC, 2015 WL 3638555 (N.D. Cal. June 11, 2015) ......................8

*Tomek v. Apple*,
   No. 2:11-cv-02700-MCE-DAD, 2012 WL 2857035 (E.D. Cal. July 11, 2012)......................13

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)................................................................................8

*Werbel ex rel. v. Pepsico, Inc.*,
   No. C 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010) .....................11

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012)..............................................................................15

*Wolph v. Acer Am. Corp.*,
   No. C 09-01314 JSW, 2009 WL 2969467 (N.D. Cal. Sept. 14, 2009) ..................16

*Yastrab v. Apple Inc.*,
   173 F. Supp. 3d 972 (N.D. Cal. Mar. 25, 2016)...................................................10

*Zuckerman v. BMG Direct Mktg., Inc.*,
   290 A.D.2d 330, 737 N.Y.S.2d 14 (1st Dep't 2002) ...........................................17

**Statutes & Rules**

Cal. Bus. & Prof. Code
   § 17200 *et seq.* .....................................................................................................5
   § 17500 *et seq.* .....................................................................................................5

Cal. Civ. Code
   § 1750..................................................................................................................5

Federal Rule of Civil Procedure 9(b)................................................................. *passim*

Federal Rule of Civil Procedure 12(b)(6) ..................................................................5

Federal Rule of Civil Procedure 12(b)(1) ..................................................................7

N.Y. Gen. Bus. Law § 349 ........................................................................................2, 5, 16, 17, 18

N.Y. Gen. Bus. Law § 350 ...................................................................................................2, 16

Federal Rule of Civil Procedure 9(b) ................................................................................. *passim*

Federal Rule of Civil Procedure 12(b)(6) ......................................................................................5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.       INTRODUCTION

Even with the opportunity to amend after Apple moved to dismiss, Plaintiffs Christian Sponchiado (a California resident) and Courtney Davis (a New York resident) still cannot allege a plausible claim that Apple overstated the screen size or number of pixels on the displays of the iPhone X, XS, and XS Max.  Plaintiffs' First Amended Complaint ("FAC") now *admits* that Apple expressly disclosed that screen size measurement is based on a "standard rectangular shape" and that the "actual viewable area is less."  Plaintiffs' attempts to avoid the fatal consequences of this admission are meritless.  Plaintiffs cannot avoid Apple's disclosure:  it appears multiple times on Apple's website and in-store representations, and it directly contradicts their claims.

Further, even apart from Apple's express disclosure, Plaintiffs cannot dispute that the issues they allege were "misrepresented" — that the display's rounded corners and notch did not contain viewable screen area or pixels — were apparent to Plaintiffs and anyone else who simply looks at the phones, whether in-person or online.  Indeed, Plaintiffs include online images of the iPhone X models in their FAC which clearly show the notch and rounded corners.  Plaintiffs' effort to repackage the verbiage (but not the substance) of the deficient pixel claims in their original Complaint is equally unavailing.  Plaintiffs' pixel claims fail for the same reasons they did before:  they are not based on any representation or omission by Apple, and they do not show that any reasonable consumer would be misled.  Plaintiffs' attempts to allege otherwise reveal a basic misunderstanding of the pixel design they challenge and how pixels are properly counted when configured in the more efficient "diamond" design.  Notably, Plaintiffs' challenge to the industry-standard method for counting pixels does not translate into any actual impairment of the display; indeed, the quality of the display is consistently praised.

Plaintiffs' allegations, all of which sound in fraud, do not come close to alleging facts sufficient to state a plausible claim for relief, let alone meet Rule 9(b)'s heightened standard for pleading fraud.  In addition, Plaintiffs may not allege claims based on the law of states where no plaintiff resides.  For these and other reasons set forth below, Plaintiffs' First Amended

Complaint should be dismissed with prejudice in its entirety.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    **Non-Resident Plaintiffs' Claims:** Whether non-resident plaintiffs may assert claims under California law.

2.    **Fraud-Based Claims:**  Whether Plaintiffs' claims, which all sound in alleged fraud, should be dismissed because Plaintiffs cannot state a claim or plead grounds for any misrepresentations or omissions.

3.    **N.Y. Gen. Bus. Law §§ 349-350:**  Whether Plaintiffs' claims under New York General Business Law §§ 349 and 350 should be dismissed because Plaintiffs cannot plead deception, injury, or causation.

## III.    RELEVANT BACKGROUND

Plaintiffs purport to represent a nationwide class of consumers who purchased Apple's iPhone X, iPhone XS, and iPhone XS Max.  (First Amended Class Action Complaint ("FAC") ¶¶ 1, 74, ECF No. 26.)  The iPhone X, launched in 2017, has been widely praised for the quality of its display, with some reviews calling it "the best display ever."[1]  It was the first iPhone display to use revolutionary OLED technology with a new, more efficient configuration of subpixels, and it was also the first iPhone that was "all-screen" because it had virtually no bezel (the border surrounding the screen, which included the home button).  The iPhone XS and XS Max, released in 2018, include the same acclaimed technology and display.

Plaintiffs, however, allege that Apple misrepresents the screen size of the phones by failing to account for the phones' rounded corners in the diagonal measurement of the screen and by concealing the rounded corners and "cut-out notch" at the top of the phone screen.  (*Id.* ¶¶ 3, 9-10.)  Plaintiffs allege that because of the notch and rounded corners, the iPhone screen is not

---

[1] *See* http://www.displaymate.com/iPhoneX_ShootOut_1a.htm (last visited May 22, 2019); https://www.techgenyz.com/2017/11/08/iphone-x-display-ever-used-smartphone/ (last visited May 22, 2019); https://mashable.com/2017/11/07/iphone-x-best-display-displaymate/#1UleNz2FDuqh (last visited May 22, 2019); https://www.cultofmac.com/512485/iphone-x-boasts-best-smartphone-display-ever/ (last visited May 22, 2019).

5.8 inches diagonally as Apple represents (which Plaintiffs describe as "5 and 13/16 inches") but

rather is "5 and 11/16 inches."  (*Id.* ¶ 10.)  As discussed above, however, Apple discloses in

numerous places that due to the rounded corners and the notch, the actual viewable screen size is

smaller.  Apple's marketing materials and its website, including in the description of the iPhone

X, XS, and XS Max display on its website, state that:

> The iPhone X display has rounded corners that follow a beautiful
> curved design, and these corners are within a standard rectangle.
> When measured as a standard rectangular shape, the screen is 5.85
> inches diagonally (***actual viewable image is less***).

(emphasis added).[2]  Remarkably, Plaintiffs include a description of the iPhone X display from

Apple's specifications ***with this disclosure*** in the FAC, and admit that the disclosure appears in

Apple's materials, but almost entirely ignore it in asserting their claims.  (FAC ¶ 39, 67.)  Apple

includes the same disclosure for the iPhone XS and XS Max (with different dimensions as

appropriate).[3]  Even more basically, both the rounded corners and the "notch," which obviously

do not contain viewable screen or pixels, are evident to anyone who looks at the phones.

Plaintiffs also challenge Apple's representation that its iPhone X screen has a 2436 x 1125

pixel resolution.  (FAC ¶¶ 7, 39.)  Plaintiffs do not dispute that the phones contain the represented

pixels per inch ("PPI") when counted based on the applicable pentile (diamond) configuration.

Instead, they argue that Apple arbitrarily counts *sub*pixels so that it can present a higher pixel

count to consumers, ignoring that the method they challenge for counting subpixels is the

standard method for the pentile configuration.  (*Id.*  ¶¶ 52, 55.)

Plaintiffs' alleged omission theory is based on the unlikely premise that the average,

reasonable consumer has an expectation as to the configuration of subpixels in a display and that

any such expectation could reasonably remain constant when a revolutionary technology is

introduced.  Plaintiffs' allegations simply ignore the widely disseminated information about the

---

[2] Declaration of Tiffany Cheung in Support of Motion to Dismiss Plaintiffs' First Amended Complaint ("Cheung Decl.") Ex. A.

[3] Cheung Decl. Exs. B-C.

new pentile configuration of the subpixels in the iPhone X displays.

Plaintiff Sponchiado, a resident of California, claims he purchased an iPhone X at an AT&T store in San Francisco.  (*Id*. ¶¶ 25-26.)  Significantly, Mr. Sponchiado now admits (as he must) that he saw the rounded corners and notch on the phone before he purchased the phone.  (*Id*. ¶ 26.)  He nonetheless purports to allege that he was exposed to and relied on "false" screen size and pixel representations in the iPhone X display and screen comparison app at the store, because he allegedly assumed the screen size measurement "referenced a rectangle that actually lay within screen area."  (*Id*. ¶¶ 26-27.)  But Mr. Sponchiado does not dispute that the screen comparison app included the disclosure that is fatal to these claims:  "*actual viewable image is less.*"

Plaintiff Davis is a resident of New York.  She claims that in deciding to purchase her iPhone XS Max, she relied on "false" screen size and pixel representations in advertisements and online as part of Apple's "continuous marketing program."  (*Id*. ¶¶ 29-30.)  But it is undisputed that Apple's online materials, including the product pages (and specifically the product page describing the display), product comparison pages, and technical specifications all contained the screen size disclosure, including that "*actual viewable image is less*."

Plaintiffs originally filed suit on December 14, 2018.  (Class Action Complaint ("Compl."), ECF No. 1.)  They alleged that in deciding to purchase their respective iPhones, they were deceived about the screen size of the iPhone X when they read and relied on the iPhones' technical specifications.[4]  (*See* Compl. ¶¶ 29-30.)  On March 22, 2019, Apple filed a motion to dismiss, together with Apple's technical specifications for the iPhone X, XS and XS Max, which included the screen size disclosure that defeats Plaintiffs' claims.  (Mot. to Dismiss ("MTD"), ECF No. 22; Cheung Decl., ¶¶ 2-4, Exs. A-C.)

Plaintiffs did not attempt to oppose Apple's motion, but instead filed the FAC on April 24, 2019.  They now assert six causes of action against Apple based on purported violations of:

---

[4] Plaintiff referred to these as "product specification sheets" but they are properly referred to as "technical specifications."  (*See* Compl. ¶¶ 29-30; Cheung Decl. Exs. A-C.)

1   (1) the Consumers Legal Remedy Act, Cal. Civ. Code § 1750 ("CLRA"); (2) the Unfair

2   Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"); (3) the False Advertising

3   Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"); (4) N.Y. Gen. Bus. Law § 349 ("GBL");

4   (5) GBL § 350; and (6) common law fraud.[5]  (*Id.* ¶¶ 91-152.)  Plaintiffs seek restitution and

5   injunctive relief, among other things.  (*Id.*, Prayer for Relief.)  The crux of the FAC remains that

6   Apple misrepresented the screen size and number of subpixels in the iPhone displays.  Gone from

7   the FAC, however, are Plaintiffs' previous allegations that they relied on the iPhone technical

8   specifications.  (*Compare* FAC ¶¶ 26, 29 *with* Compl. ¶¶ 29-30.)  Plaintiffs, however, now

9   expressly admit that Apple's marketing materials contained the screen size disclosure; they

10   continue to include in their FAC an image of the technical specifications with the disclosure.

11   (FAC ¶¶ 39, 67.)

12   **IV.   LEGAL STANDARD**

13       A complaint must be dismissed for failure to state a claim under Federal Rule of Civil

14   Procedure 12(b)(6) if the plaintiff either fails to state a cognizable legal theory or has not alleged

15   facts sufficient to establish a claim for relief that is "plausible on its face."  *See* Fed. R. Civ. P.

16   12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

17   U.S. 544, 570 (2007)); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).

18   While the Court must accept well-pled facts as true, "conclusory allegations without more are

19   insufficient to defeat a motion to dismiss."  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810

20   (9th Cir. 1988).  Thus, the Court must not assume the truth of legal conclusions merely because

21   they are pled in the form of factual allegations, nor should it accept as true allegations

22   contradicted by judicially noticeable facts.  *Iqbal*, 556 U.S. at 677-79; *Twombly*, 550 U.S. at 555

23   ("plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

24

25       [5] Plaintiffs' original complaint included a cause of action for unjust enrichment.  (Compl.
   ¶¶ 146-151.)  Plaintiffs have not reasserted that claim in their FAC, and it is accordingly waived.

26   *A'lor Int'l Ltd. v. Tappers Fine Jewelry*, 605 F. App'x 662, 662–64 (9th Cir. 2015) (plaintiff
   waives all causes of action alleged in the original complaint that are "voluntarily" not included in

27   the amended complaint.)

28

1    labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

2    do").

3            Claims grounded in fraud are subject to the heightened pleading requirements of Federal

4    Rule of Civil Procedure 9(b).  *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1198 (N.D. Cal. 2014)

5    (UCL and CLRA claims sounding in fraud); *see Lazar v. Superior Court*, 12 Cal. 4th 631, 649

6    (1996) (common law fraud under California law); *Eternity Global Master Fund Ltd. v. Morgan*

7    *Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (common law fraud under New York

8    law).  Rule 9(b) requires that a fraud-based claim "state with particularity the circumstances

9    constituting fraud."  Fed. R. Civ. P. 9(b).  To satisfy this heightened standard, the plaintiff must

10   allege the time, place, and specific content of any false representations as well as the identities of

11   the parties to the alleged misrepresentations.  *Moore*, 73 F. Supp. 3d at 1198.  The plaintiff must

12   also set forth "what is false or misleading about a statement, and why it is false."  *Id.* (citation

13   omitted); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("A party

14   alleging fraud must 'set forth *more* than the neutral facts necessary to identify the transaction.'")

15   (citation omitted).  Rule 9(b) further requires that the plaintiffs identify the particular

16   advertisements they claim were misleading.  *Palmer v. Apple Inc.*, No. 5:15-cv-05808-RMW,

17   2016 WL 1535087, at *5 (N.D. Cal. Apr. 15, 2016) (allegations of fraud were insufficient to

18   satisfy Rule 9(b) where plaintiff had not alleged "which specific advertisements or statements he

19   personally saw or when they were made").

20   **V.    ARGUMENT**

21          **A.    A Non-California Plaintiff Cannot Pursue Claims Under California**
             **Law.**
22

23           As a threshold matter, Ms. Davis's claims under California law should be dismissed

24   because as a New York resident, she has no basis for applying California law to her claims.

25   Ms. Davis admits that she is not a resident of California and did not purchase her iPhone in

26   California; she is a resident of New York and purchased her phone online.  (FAC ¶¶ 29-30.)

27   Particularly given that Ms. Davis also asserts claims under the laws of New York, her state of

28   residence, she cannot apply California law to her claims.  *See In re Apple & AT&T iPad*

*Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2012) (dismissing CLRA and UCL claims by non-California residents who purchased their iPad and data plans outside of California); *Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *2-3 (N.D. Cal. July 11, 2012) (dismissing out-of-state plaintiffs' UCL and CLRA claims where plaintiff purchased her computer in Massachusetts).

### B.   Plaintiffs Cannot Pursue State Law Claims For States in Which No Named Plaintiff Resides.

Plaintiffs' effort to allege state law claims and state law subclasses for states in which no named plaintiff resides must be rejected and those claims dismissed.  (*See* FAC ¶ 17.)  Courts in this district uniformly hold  that where, as here, a representative plaintiff is lacking for a particular state, all claims based on that state's laws must be dismissed because no named plaintiff has standing to assert them.  *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1175 (N.D. Cal. 2017) (dismissing claims under Rule 12(b)(1) for lack of standing because plaintiffs failed to "present named class representatives who possesses individual standing to assert [] claims"); *Cover v. Windsor Surry Co.*, No. 14-cv-05262-WHO, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016) (finding named plaintiff could not assert state law claims under laws of states he did not represent).

### C.   Plaintiffs Fail to Allege Facts Sufficient to Support Any of Their Fraud-Based Claims.

Plaintiffs' claims under the consumer protection laws of California (UCL, FAL, and CLRA) and New York (GBL) and for common law fraud should be dismissed for at least three reasons.  First, Plaintiffs' claims fail to meet the heightened pleading requirements of Rule 9(b).  Second, Apple's screen-size disclosure and the phone itself preclude any assertion of deception and reliance.  Third, Plaintiffs fail to plead a viable omission-based claim regarding the purported "false pixels."

#### 1.   Plaintiffs Fail to Satisfy Rule 9(b)'s Particularity Requirements.

Plaintiffs' core allegation is that Apple allegedly deceived consumers with its representations regarding the screen size and pixel content of certain iPhone X models.  Plaintiffs

1  assert claims under the consumer protection laws of California and New York as well as claims

2  for common law fraud, but Plaintiffs fail to plead facts to sufficient to support any of these

3  claims.

4        Because all of Plaintiffs' claims allege fraud, they must meet Rule 9(b)'s heightened

5  pleading standard, which requires plaintiffs to provide the "who, what, when, where, and how" of

6  any misrepresentations underlying their claims.  *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637

7  F.3d 1047, 1055 (9th Cir. 2011) (citation omitted).  Critically, under Rule 9(b), a "plaintiff must

8  set forth what is false or misleading about a statement, and why it is false."  *Vess v. Ciba-Geigy*

9  *Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  Conclusory allegations of

10  fraud are not enough—plaintiffs must plead detailed and specific facts.  *Kearns*, 567 F.3d at 1124.

11  Plaintiffs fall short of Rule 9(b)'s heightened standard because they fail to plead any

12  misrepresentation by Apple with the requisite specificity.

13        Here, both Plaintiffs assert that they relied on Apple's alleged misrepresentations about

14  the iPhone screen size and quality in its "marketing campaign."  (*See* FAC ¶¶ 7, 18.)  And

15  although Plaintiffs generally allege they saw Apple marketing materials, they never specify, as

16  Rule 9(b) requires, which particular marketing materials they relied upon in making the decision

17  to purchase their phones, including when they were exposed to them, which ones they found

18  material, who made the statements, or when they were made.  *Kearns*, 567 F.3d at 1126; *Palmer*,

19  2016 WL 1535087, at *5 (plaintiff must allege "which specific advertisements or statements he

20  personally saw or when they were made"); *T&M Solar & Air Conditioning, Inc. v. Lennox Int'l*

21  *Inc.*, No. 14-cv-05318-JSC, 2015 WL 3638555, at *2 (N.D. Cal. June 11, 2015) (Under Rule 9(b),

22  a plaintiff must "set forth what is false or misleading about a statement, and why it is false."

23  (citation omitted)); *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1147 (N.D. Cal. 2013) ("At

24  the very least, to satisfy Rule 9(b)'s heightened pleading requirement, [plaintiff] must allege with

25  more particularity why these statements are false.").

26        Ms. Davis's vague allegations regarding the advertisements and online images she

27  purportedly relied upon are thus defective.  (FAC ¶ 29.)  Ms. Davis alleges that she was exposed

28  to claims regarding the iPhone XS Max "in advertisements" but she never specifies what

advertisements she saw, where they appeared, or how she relied on them. Nor does she dispute that the online materials contained the screen size disclosure. And although she alleges that certain representations she saw online, including some images on Apple's website, were deceptive because the notch at the top of the phone was allegedly obscured by the black background on the iPhone's screen, she fails to allege when she saw those images or that she relied on them in making her purchase. (*Id.*) Nor could she. Plaintiffs admit that numerous other images of the iPhone X models on the website, *including those Plaintiffs include in their FAC*, clearly show the notch. (*Id.* ¶¶ 5, 59, 66.) Plaintiffs complain that consumers would not see these online images unless they scrolled down, but Ms. Davis does not allege that she did not see the notch. Further, Ms. Davis does not allege that she never saw an iPhone X in everyday life or that she was unaware of the notch when she made her purchase.[6]

Mr. Sponchiado's allegations that he was exposed to "the iPhone X display" and "a screen comparison app" in an AT&T store fare no better. (*Id.* ¶ 26.) He does not say what the AT&T store display consisted of (or even whether it included anything other than the phones themselves); and, he makes no effort to identify, as Rule 9(b) requires, what was false or misleading in the display. Similarly, he offers no details about the specific representations he saw in the screen comparison app, and, in any event, he does not dispute that the app contained the screen size disclosure, which defeats his claim.

Because Plaintiffs fail to sufficiently allege that they actually viewed or relied on any particular representation, and because their allegations of deception are implausible, their claims must be dismissed. *See Richardson v. Reliance Nat'l Indemn. Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *4 (N.D. Cal. Mar. 9, 2000) ("Plaintiff may not simply set forth conclusory allegations of fraud punctuated by a handful of neutral facts." (quotations and citation omitted)).

---

[6] Notably, in the original complaint, Ms. Davis alleged that she visited an Apple store to submit her pre-order, where she necessarily saw the phone, notch and all. (Compl. ¶ 30.) Her artful pleading does not change that. *Royal Primo Corp. v. Whitewater W. Indus., Ltd.*, No. 15-cv-04391-JCS, 2016 WL 1718196, at *3 (N.D. Cal. Apr. 29, 2016) (court may consider prior allegations as part of context-specific inquiry when assessing amended complaint making inconsistent or contradictory allegations); *McKenna v. WhisperText*, No. 5:14-cv-00424-PSG, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015) (same).

Plaintiffs apparently seek to excuse their failure to identify the particular marketing materials they saw and relied on by asserting that Apple engaged in a "continuous marketing program." (FAC ¶ 29.)  Plaintiffs' attempt to invoke the narrow exception recognized in *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009), is meritless.  Apple's alleged representations do not come close to the decades-long mass advertising campaign embarked upon by cigarette manufacturers in *Tobacco II*.  Courts since *Tobacco II* have squarely rejected its application to marketing campaigns of far longer duration than the year or two the iPhones at issue here have been sold.  *See, e.g.*, *Haskins v. Symantec Corp.*, No. 13-cv-01834-JST, 2013 WL 6234610, at *5 (N.D. Cal. Dec. 2, 2013) (six-year advertising campaign did not implicate *Tobacco II*).  "Even when members of a putative class are exposed to a long term and/or widespread advertising campaign, named plaintiffs must, under Rule 9(b), plead separately and with particularity their individual exposure to the purportedly deceptive advertising campaign so as to put defendant on notice of 'what' the alleged misrepresentations were."  *In re NJOY Consumer Class Action Litig.*, No. CV 14-00428 MMM (RZx), 2014 WL 12586074, at *10 (C.D. Cal. Oct. 20, 2014) (collecting cases).  And any such campaign "does not, and indeed could not, supplant a federal plaintiff's obligation to describe that campaign with the particularity prescribed by Rule 9(b), which must include what is false or misleading about the advertising and why it is false."  *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 980 (N.D. Cal. Mar. 25, 2016).

Accordingly, Plaintiffs' allegations are insufficient to state a claim under Rule 9(b)'s heightened pleading standard.  *Cafasso*, 637 F.3d 1047, 1055 (9th Cir. 2011) (requiring plaintiffs to provide the "who what, when, where, and how" for fraud-based claims); *Palmer*, 2016 WL 1535087, at *5 (allegations of fraud were insufficient to satisfy Rule 9(b) where plaintiff had not alleged "which specific advertisements or statements he personally saw or when they were made).

### 2.     Plaintiffs Fail to Plausibly Allege Either Deception or Reliance Regarding the Screen Size Representations.

Even if Plaintiffs could provide additional details regarding the alleged fraud, Plaintiffs cannot plausibly allege either that Apple's representations were deceptive, or that any consumer could reasonably have relied on the allegedly deceptive statements.  Under the CLRA, UCL and

1   FAL, statements are actionable only if they are likely to deceive a reasonable consumer.  *See*

2   *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (California consumer protection statutes,

3   including the UCL, FAL, and CLRA, are governed by the "reasonable consumer" test).  "Likely

4   to deceive" implies "more than a mere possibility" that a statement "'might conceivably be

5   misunderstood by some few consumers viewing it in an unreasonable manner.'"  *Id.* (quoting

6   *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).  Rather, the statement must

7   be "such that it is probable that a significant portion of the general consuming public or of

8   targeted consumers, acting reasonably in the circumstances, could be misled."  *Lavie*, 105 Cal.

9   App. 4th at 508.  "Thus, where a court can conclude as a matter of law that members of the public

10  are not likely to be deceived […], dismissal is appropriate."  *Werbel ex rel. v. Pepsico, Inc.*, No. C

11  09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010).  Both Plaintiffs' claims of

12  deception are implausible.

13          Here, Apple's express disclosure defeats any attempt to allege reasonable reliance.

14  Plaintiffs now *admit* that Apple made the screen size disclosure in multiple places.  Plaintiffs'

15  allegation that the disclosure is "obscure" is flat wrong.  Plaintiffs also now artfully omit the

16  allegation from their original complaint that they relied on the technical specifications in a blatant

17  attempt to avoid the prominence of the disclosure there, where it is conspicuously set out from

18  other text and emphasized in italics.  As a matter of law, they may not do so.[7]  In any event, they

19  include the same screenshot of the technical specifications, *with* the disclosure, in the FAC:

20

21

22

23

---

24          [7] Plaintiffs cannot avoid their previous admissions that they relied on the technical
    specifications; they cannot evade their prior allegations with contradictory pleadings here.
25  (*Compare* Compl. ¶¶ 29-30 *with* FAC ¶¶ 26-27, 30.)  When evaluating an amended complaint
    that makes inconsistent or contradictory allegations, the court may "consider the prior allegations
26  as part of its context-specific inquiry […] to assess whether an amended complaint plausibly
    suggests an entitlement to relief."  *Royal Primo Corp.*, 15-cv-04391-JCS, 2016 WL 1718196, at
27  *3 (N.D. Cal. Apr. 29, 2016); *and see McKenna*, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9,
    2015) (same).

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## iPhone X – Technical Specifications

Languages English





**Finish**

- Space Gray
- Silver

**Capacity[1]**

- 64GB
- 256GB

**Size and Weight[2]**

- Height: 5.65 inches (143.6 mm)
- Width: 2.79 inches (70.9 mm)
- Depth: 0.30 inch (7.7 mm)
- Weight: 6.14 ounces (174 grams)

**Display**

- Super Retina HD display
- 5.8–inch (diagonal) all–screen OLED Multi–Touch display
- HDR display
- 2436–by–1125–pixel resolution at 458 ppi
- 1,000,000:1 contrast ratio (typical)
- True Tone display
- Wide color display (P3)
- 3D Touch
- 625 cd/m2 max brightness (typical)
- Fingerprint–resistant oleophobic coating
- Support for display of multiple languages and characters simultaneously

*The iPhone X display has rounded corners that follow a beautiful curved design, and these corners are within a standard rectangle. When measured as a standard rectangular shape, the screen is 5.85 inches diagonally (actual viewable area is less).*

(Cheung Decl. Exs. A; *see also* Exs. B-C.)

Plaintiffs further admit that the disclosure appears on iPhone XS and XS Max webpages. (FAC ¶¶ 39, 67.)[8]  Similarly, the product comparison screen Mr. Sponchiado allegedly saw in the

---

[8] In addition to appearing on the iPhone XS and XS Max webpages, the disclosure also appeared on the iPhone X webpage (https://web.archive.org/web/20180912141933/https://www.apple.com/iphone-x/).  The disclosure appears in several other places on Apple's website including in the technical specs (*see*

1    store (*id*. ¶ 29), which Plaintiffs cite in the FAC, includes an asterisk after the display size

2    measurement.  (*Id*. ¶ 8.)  Plaintiffs' image selectively omits the asterisked statement itself, which

3    is the *same* disclosure that appears in numerous other materials regarding the display.

4         Plaintiffs' admission that Apple's marketing materials, including materials they

5    indisputably saw, contained the screen size disclosure defeats any claim of reliance as a matter of

6    law.  *Tomek v. Apple*, No. 2:11-cv-02700-MCE-DAD, 2012 WL 2857035, at *4 (E.D. Cal. July

7    11, 2012) (citing *Maloney v. Verizon Internet Servs.*, *Inc.*, 413 F. App'x 997, 999-1000 (9th Cir.

8    2011) (finding plaintiff failed to allege reliance on any battery-related misrepresentations where

9    defendant expressly disclosed variations in battery life and charge cycles).

10        Plaintiffs' effort to avoid this result by contending that the disclosure is "obscure" is

11   meritless.  First, as demonstrated above, the disclosure in the technical specifications is prominent

12   and emphasized in italics.  Further, that the screen size disclosure appears in a footnote on the

13   product webpages and comparison pages does not make it "obscure."  To the contrary, the

14   disclosure is prominent, and that footnote appears in *multiple* places online and in stores.

15   Plaintiffs' effort to quibble with the *placement* of the footnote ( FAC ¶ 67) is meritless on its face.

16   A reasonable consumer could not fail to understand that a footnote placed after the phrase "**5.8"**

17   (diagonal) all-screen OLED" contains information relevant to the size of the screen and display.

18   Plaintiffs cannot seriously contend otherwise.  Apple's express disclosure bars Plaintiff's claims.

### 3.    Plaintiffs' "False Pixel" Allegations Fail to State Either An Express Misrepresentation or an Omissions Claim.

20        Plaintiffs' attempt to repackage their pixel allegations to state a claim is unavailing; the

21   substance is unchanged and remains wholly deficient.  Most simply, Plaintiffs do not and cannot

22   point to any representation or omission by Apple with respect to the number of pixels contained

23   in the iPhone X, XS, or XS Max displays, nor do they attempt to do so.  Rather, Plaintiffs' "false

24   pixel" claim continues to be based on alleged miscounting of subpixels, but Apple does not make

25   any representations regarding subpixels.  Plaintiffs attempt to address this deficiency in their

27   https://www.apple.com/iphone-xs/specs/) and on the product comparison webpage (*see*
     https://www.apple.com/iphone/compare/).

complaint by alleging that Apple "advertises [the phones] as having one pixel for every two subpixels." (FAC ¶ 50). But Plaintiffs wholly fail to identify where Apple supposedly makes that representation. Further, if that is Plaintiffs' new theory, their pixel claim fails because the statement is true based on Plaintiffs' own allegations, and there is no misrepresentation. (*See* FAC ¶¶ 40-42.) In any event, Plaintiffs' vague allegations do not establish that Apple makes any misleading statements about subpixels. Plaintiffs accordingly fail to allege an affirmative misrepresentation claim.

Plaintiffs' effort to state an omissions claim by arguing that Apple did not tell consumers that the iPhone X models contain a different subpixel structure than Apple's earlier pre-OLED phones also fails, for multiple reasons. (*See* FAC ¶¶ 39, 46.) First, Plaintiffs do not plausibly allege that they, or any reasonable consumer, had *any* understanding or expectation about the subpixel arrangement in the iPhone's display. This is fatal to any potential omissions claim, which requires a showing that a reasonable consumer would be misled by the alleged omission. *In re iPhone 4s Consumer Litig.*, 637 F. App'x 414, 416 (9th Cir. 2016) (upholding dismissal because court "could not determine if a reasonable consumer would be misled" by representations concerning iOS.")

Moreover, notably absent from Plaintiffs' lengthy exposition of subpixel structure is any discussion of the standard structure of subpixels in displays at or above a certain pixel density. Similarly, although Plaintiffs include a diagram in their FAC which reveals the pentile (diamond) structure of the displays at issue, they ignore that the arrangement of subpixels and counting of pixels is dictated by this pentile structure. Plaintiffs' "false pixel" allegations reveal a basic misunderstanding of the pixel design they purport to challenge.[9]

Plaintiffs allege that Apple's purported failure to disclose the subpixel content of its displays somehow implied that the displays were of higher quality than was true. This effort to concoct an omissions claim also fails. Plaintiffs never allege that they (or any other user)

---

[9] Plaintiffs' attempt to compare the Apple Watch to the iPhone screen similarly ignores the differences between the pixel structure of the watch display and the iPhone display; the former does not utilize the pentile structure.

1   perceived any display quality issue, were dissatisfied with the quality of the display, or

2   complained about the quality of the display.  Plaintiffs allege not a single fact supporting the

3   allegation that there is any issue with display quality.  To the contrary, the displays are widely

4   praised.  (*See* Section III *supra*).

5          Further, Plaintiffs fail to meet any of the other legal requirements for an omissions claim.

6   As one court has explained, it is not enough to "allege that information about [the alleged issue],

7   had it been disclosed, would have been material to" Plaintiffs' purchase and use of their phones.

8   *Hall v. Sea World Entm't, Inc.*, No. 15-660, 2015 WL 9659911, at *7 (S.D. Cal. Dec. 23, 2015).

9   Rather, under *Wilson*, "[a] manufacturer's duty to consumers is limited to its warranty obligations

10  absent either an affirmative misrepresentation or a safety issue."  *Wilson v. Hewlett-Packard Co.*,

11  668 F.3d 1136, 1141 (9th Cir. 2012).  But Plaintiffs do not—and cannot—allege that the pixel

12  count is a "safety" issue, much less an "unreasonable safety hazard," nor, as discussed above, do

13  Plaintiffs allege an express misrepresentation.

14         In *Hodsdon v. Mars, Inc.*, the Ninth Circuit suggested, but did not decide, that

15  manufacturers may also "have a duty to disclose a defect when it affects the central functionality

16  of a product."  891 F.3d 857, 863 (9th Cir. 2018).  But, even if that were the law, Plaintiffs do not

17  allege facts that come close to meeting this test.  Plaintiffs offer a vague allegation that the "false

18  pixels" somehow result in diminished display quality, but never claim that they themselves (or

19  any other user) perceived any display quality issue or were dissatisfied with the quality of the

20  display.  Even if they attempted to do so, Plaintiffs could not possibly allege that it impaired the

21  "central functionality" of their phones.  Plaintiffs do not and cannot suggest that they were unable

22  to read or use their displays or that their ability to do so was significantly impaired.  Plaintiffs

23  wholly fail to cross the threshold for pleading an omissions claim.

24         Moreover, even if they were able to cross that initial threshold, Plaintiffs do not plead the

25  facts necessary to establish a duty to disclose.  To do so, they must plead one of the following: a

26  fiduciary relationship (which does not exist here), partial misleading representations, active

27  concealment, or exclusive knowledge.  *Hodsdon*, 891 F.3d at 862.  Plaintiffs plead none of these

28  theories.

1    ***No Partial Misrepresentations.***  Plaintiffs do not point to any alleged partial

2    representation regarding the subpixels in the iPhone X models' displays.  Accordingly, Plaintiffs

3    cannot base the duty to disclose on any alleged partial misrepresentation.

4    ***No Active Concealment.***  Plaintiffs also do not and cannot allege any specific, affirmative

5    acts by Apple to hide or conceal its pixel design.  *Herron v. Best Buy Co*., 924 F. Supp. 2d 1161,

6    1176 (E.D. Cal. Feb. 13, 2013).  Far from concealing its new technology, Apple highlighted it

7    when it first introduced the iPhone X in September 2017.  (Apple keynote, September 12, 2017.)

8    Nor did Apple ever suggest that the new displays had the same subpixel structure as that in prior

9    iPhones.  Notably, numerous articles online explain the advanced, more efficient pentile structure

10   contained in the iPhone X OLED screen.  (*See* www.idownloadblog.com/2017/11/02/iphone-x-

11   oled-pixel-layout/ (last visited May 22, 2019; www.displaymate.com/iPhoneX_ShootOut_1a.htm

12   (last visited May 22, 2019).)[10]  This defeats their omission claim.

13   ***No "Exclusive" Knowledge.***  Moreover, the online articles make clear that the new pixel

14   design of the iPhone X was publicly known, refuting any argument that Apple had "exclusive

15   knowledge" of the pixel structure.  *Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2009 WL

16   2969467, at *4 (N.D. Cal. Sept. 14, 2009) (dismissing omissions claim where complaint disclosed

17   that allegedly omitted memory deficiencies had previously been the subject of an article in

18   *Computer World* prior to purchase).

19                    **D.      Plaintiffs' New York General Business Law Claims Fails.**

20   Plaintiffs' New York General Business Law §§ 349 and 350 claims fail for the same

21   reasons as their fraud-based claims under California law.  Plaintiffs fail to allege "deception" as

22   required by these statutes for all the same reasons, discussed above, that they fail to allege facts

23   showing either an affirmative misrepresentation or omission.  Similarly, Plaintiffs fail to

24   demonstrate the requisite causation or injury.

25   First, to be deceptive, an act must be likely to mislead a reasonable consumer acting

26

27   _____

     [10] Apple cites these third-party sources to illustrate the public discussions about the

28   subpixel structure of the relevant devices, but did not verify every statement of these publications.

1    reasonably under the circumstances.  *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).

2    But as discussed above, Plaintiffs cannot dispute that they saw Apple's screen size disclosure,

3    stating that the "actual viewable area is less" and that they saw the phones, rounded corners and

4    all, before they made their purchases.  (*See* Section C.2., *supra*).  This precludes any claim of

5    deception.  *Zuckerman v. BMG Direct Mktg., Inc*., 290 A.D.2d 330, 737 N.Y.S.2d 14 (1st Dep't

6    2002) (holding shipping and handling fees not deceptive where amounts disclosed); *Sands v.

7    Ticketmaster-New York, Inc.*, 207 A.D.2d 687, 616 N.Y.S.2d 362 (1st Dep't 1994) (same

8    regarding disclosed ticket service fees).

9            Second, Apple's express disclosure necessarily breaks any causal link between any

10   purported misrepresentation or omission and any alleged injury to Plaintiffs.  Their GBL claims

11   accordingly fail.  *See Gale v. IBM Corp.*, 9 A.D. 3d 446, 447 (2d Dep't 2004) (dismissing GBL

12   § 349 claim for failing to plead causation and noting that "[i]f the plaintiff did not see any of these

13   statements, they could not have been the cause of his injury, there being no connection between

14   the deceptive act and the plaintiffs' injury").  Moreover, even absent the disclosure, Plaintiffs do

15   not allege facts that establish that Apple's purported misrepresentations were the cause of any

16   alleged injury to them, as required for their claims.  *See Abraham v. Am. Home Mortg. Servicing,

17   Inc.*, 947 F. Supp. 2d 222, 234 (E.D.N.Y. 2013) (for claims under GBL § 349 "'[t]he causation

18   element is essential: The plaintiff must show that the defendant's material deceptive act caused

19   the injury'"); *see also Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324, n.1 (2002)

20   (identical standard for GBL § 350 claims).  Far from showing how the disclosures were

21   misleading, or false, or that they were injured as a result of the allegedly false disclosures,

22   Plaintiffs wholly fail to allege facts establishing either an affirmative misrepresentation or

23   omission.  *See Spagnola*, 574 F.3d at 74; *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp.

24   3d 357, 361 (E.D.N.Y.2014) (plaintiffs must "describe[ ] in detail the allegedly misleading and

25   deceptive statements").  Their GBL claims should be dismissed.  *See Abraham*, 947 F. Supp. 2d

26   at 235 (dismissing GBL § 349 claim for failure to plead causation given that plaintiffs made "only

27   general allegations" about the purportedly misleading disclosures).

28

1

## VI.    CONCLUSION

For the reasons set forth herein, Apple respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint in its entirety.

Dated: May 22, 2019                              MORRISON & FOERSTER LLP


By:    _/s/ Tiffany Cheung_
                                                      TIFFANY CHEUNG

                                                      Attorneys for Defendant
                                                      APPLE INC.