United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN SPONCHIADO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 18-cv-07533-HSG <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** <br><br> Re: Dkt. No. 27 |

Pending before the Court is Defendant's motion to dismiss the First Amended Complaint ("FAC"). Dkt. No. 27 ("Mot."). For the reasons articulated below, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss.

I.  **BACKGROUND**

Plaintiffs Christian Sponchiado and Courtney Davis bring this putative consumer class action against Defendant Apple, Inc., alleging that Apple misrepresented the pixel resolutions and display sizes for the iPhone X, iPhone XS, and iPhone XS Max products (the "iPhone Products"). *See generally* Dkt. No. 26 ("FAC"). The FAC alleges the following facts, which are taken as true for the purpose of deciding the motion to dismiss.[1]

**A. Screen Pixels**

A pixel is a "tiny unit" on a mobile screen that combines with other pixels to create color

---

[1] Defendant requests that the Court take judicial notice of or consider incorporated by reference Exhibits A–C, which are printouts of webpages from Apple's website listing the technical specifications for each of the iPhone Products at issue. Dkt. Nos. 27-1, 28. Plaintiff does not oppose the request. The Court does not agree that these specific webpages are incorporated by reference. In any event, the Court does not consider Exhibits A–C in resolving the motion, and thus **DENIES AS MOOT** Defendant's request for judicial notice. *See In re Facebook, Inc. S'holder Derivative Privacy Litig.*, 367 F. Supp. 3d 1108, 1118 (N.D. Cal. 2019) (denying as moot request for judicial notice of documents not considered by the court).

images. *Id.* ¶ 33. Pixels are made from subpixels, and each subpixel outputs exactly one color. *Id.* ¶ 34. A "true screen pixel" purportedly will have at least one red subpixel, one green subpixel, and one blue subpixel. *Id.* ¶ 38. By changing the brightness and intensity of each subpixel, the pixel can change the shade of its color. *Id.* ¶¶ 34–35. The subpixels are typically lined up on the screen in a red, green, and blue order ("RGB"). *Id.* ¶ 36.

Apple advertises the iPhone Products as having a higher number of pixels than their previous models. *Id.* ¶¶ 4–7. For example, Apple advertises its iPhone X and XS as having a "2436-by-1125 pixel resolution at 458 ppi," whereas the iPhone 8 has a "1920-by-1080 pixel resolution at 401 ppi." *Id.* ¶¶ 5–6. The pixel resolution is displayed on Apple's website and in stores. *Id.* ¶¶ 4–8. The display phones in the retail stores have a built-in application ("Compare iPhone") which compares the specifications of the different iPhone models, including the pixel resolution. *Id.*

Plaintiffs allege that the pixel resolution is misleading because Apple includes "false pixels," which are pixels that share fractions of subpixels with adjacent pixels. *Id.* ¶¶ 40–41. This purportedly means that the pixels in the iPhone Products "cannot all freely make any color," because each false pixel is unable to "freely use" the subpixels that it shares with the adjacent pixels. *Id.* ¶ 43. Further, the shared subpixels allegedly cannot "simultaneously be the appropriate brightness for all of the false pixels" between which they are shared. *Id.* ¶ 50. According to Plaintiffs, the iPhone Products only have "half of the advertised number of pixels and two thirds of the advertised number of subpixels." *Id.* ¶ 44. Apple is purportedly misleading "reasonable consumers to believe that its Product screens provide the same clarity as would RGB screens of the advertised resolution." *Id.* ¶ 51.

**B. Screen Size**

The FAC alleges that Apple also misrepresented the screen area of the iPhone Products, because the advertised dimensions (for example, 5.8 inches diagonally for the iPhone X and XS) include the rounded corners of the iPhone. *Id.* ¶ 10. The rounded corners purportedly "cut[ ] the diagonal size by about 1/16 of an inch," meaning that the viewable screen size without the rounded corners is less than advertised (for example, "5.6875 inches" for the iPhone X and XS).

2

*Id*. According to Plaintiffs, Apple's screen size representation is deceiving because "[r]easonble consumers … would reasonably assume that these diagonal measurements referenced a rectangle," instead of a "hypothetical rectangle whose hypothetical corners sit outside the device's actual screen area." *Id*. ¶ 12. Plaintiffs also allege that Apple intentionally tried to "obscure" the fact that the iPhone XS and iPhone XS Max have "notches" at the top of the screen. *Id*. ¶ 13. Apple allegedly used a "color image of a planet" against a black background in its advertising to camouflage the notch. *Id*.

Apple advertised the screen sizes on its website and in retail stores. *Id*. ¶¶ 13–14. Apple's webpages for the iPhone XS and XS Max include a disclaimer in a footnote at the bottom of the page, disclosing that the "actual screen area is less than indicated by the diagonal measurements." *Id*. ¶ 67. The corresponding footnote is placed immediately after the last word in the statement concerning the screen size dimension. *Id*. ¶¶ 14, 67 ("5.8 [inch] Super Retina custom OLED display [FN1]"). Another online advertisement includes a disclaimer that the iPhone X "display has rounded corners that follow a beautiful curved design, and these corners are within a standard rectangle. When measured as a standard rectangular shape, the screen is 5.85 inches diagonally (actual viewable area is less)." *Id*. ¶ 39. And in stores, the "Compare iPhone" application for the iPhone X includes an asterisk after the following text: "Super Retina HD display 5.8 [inch] (diagonal) all-screen OLED*." *Id*. ¶ 8. However, the FAC does not make clear whether there is corresponding text explaining what the asterisk means, and if so, where that text is located.

### C. Plaintiffs' Allegations

Plaintiff Sponchiado is a citizen of California. *Id*. ¶ 25. In December 2017, he purchased an iPhone X at a store in San Francisco. *Id*. ¶¶ 26–27. He purportedly was "exposed to Defendant's false pixel claims and false diagonal length claims at the iPhone X display, as well as through a screen comparison app." *Id*. ¶ 26. Plaintiff Davis is a citizen of New York. *Id*. ¶ 29. She claims that in September 2018, she was "exposed to Defendant's screen claims regarding the iPhone XS Max in advertisements and online as part of Defendant's continuous marketing program." *Id*. In reliance on these representations, Plaintiff Davis pre-ordered the iPhone XS online. *Id*. ¶ 30. Each Plaintiff purchased an iPhone Product "believing it would provide both the

3

advertised screen size and the advertised screen quality." *See id.* ¶ 27; *see also id.* ¶ 30. But because the phones purportedly "did not provide the advertised screen size or screen quality/resolution," Plaintiffs suffered "injury in fact and lost money." *See id.* ¶ 27; *see also id.* ¶ 30.

Based on these facts, Plaintiffs assert the following six causes of action against Apple: (1) California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (2) California Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code §§ 17200 *et seq.*; (3) California False Advertising Law ("FAL"), Cal. Bus. & Profs. Code §§ 17500 *et seq.*; (4) New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349; (5) New York False Advertising Law, N.Y. Gen. Bus. Law § 350; and (6) common law fraud. *Id.* ¶¶ 91–152. Plaintiff also appears to assert claims under the laws of each of the fifty states and the District of Columbia. *Id.* ¶ 17.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

4

2008). And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may also challenge a complaint's compliance with Federal Rule of Civil Procedure 9(b) where fraud is an essential element of a claim. *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). Rule 9(b), which provides a heightened pleading standard, states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citation and quotations omitted).

## III. DISCUSSION

Defendant moves to dismiss on several grounds: (1) Plaintiffs fail to meet the heightened pleading requirements under Rule 9(b); (2) Defendant's screen-size disclosure precludes any assertion of deception and reliance; and (3) Plaintiffs fail to plead a viable omission claim based on the alleged pixel misrepresentation. Mot. at 7–17. Defendant also argues that Plaintiffs cannot pursue claims under laws of states in which no Named Plaintiff resides. *Id.* at 6. The Court addresses the arguments below.

### A. California Consumer Protection Statutes: "Reasonable Consumer"

Claims under the California consumer protection statutes (CLRA, UCL, and FAL) are governed by the "reasonable consumer test." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)). This standard also applies to common law fraud claims. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.

5

1995). Under the reasonable consumer standard, a plaintiff must "show that 'members of the public are likely to be deceived.'" *Gerber*, 552 F.3d at 938 (quoting *Freeman*, 68 F.3d at 289). The test assesses not whether it is *possible* that an advertisement will deceive consumers, but whether "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).

"[T]he primary evidence in a false advertising case is the advertising itself." *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003) (citation and quotations omitted). "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision" at the motion to dismiss stage. *Gerber*, 552 F.3d at 938. However, dismissal is appropriate where "the advertisement itself ma[kes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived." *Id.* at 939. Courts in this circuit have granted motions to dismiss after finding that the alleged advertisements include qualifying language which make the meaning of the representation clear. *See, e.g.*, *Freeman*, 68 F.3d at 289 (affirming district court's dismissal of California consumer claim when "[n]one of the qualifying language is hidden or unreadably small" and appears "immediately next to the representations it qualifies"); *Dinan v. Sandisk LLC*, No. 18-CV-05420-BLF, 2019 WL 2327923, at *7 (N.D. Cal. May 31, 2019) (reasonable consumer could not be deceived regarding the number of bytes in the storage device, given that the packaging disclosed exactly how many bytes consumer would receive); *Bobo v. Optimum Nutrition, Inc.*, No. 14CV2408 BEN (KSC), 2015 WL 13102417, at *5 (S.D. Cal. Sept. 11, 2015) (dismissing claims when language elsewhere on packaging clarified that "100% WHEY" did not mean "100% protein," as "a reasonable consumer, like the plaintiff in *Freeman*, cannot look at only one statement to the exclusion of everything else and claim he has been misled").

### i. Screen Size Representations

As currently pled, Plaintiffs' claims asserting that Defendant misrepresented the iPhone Products' screen size fail, given the qualifying language next to the alleged misrepresentations. *See Freeman*, 68 F.3d at 289. Plaintiffs admit that the advertisements disclose that the "actual screen area is less than indicated by the diagonal measurements." FAC ¶ 67; *see also id*. ¶ 39

6

(advertisement disclosing that the iPhone X "display has rounded corners," and that "[w]hen measured as a standard rectangular shape, the screen is 5.85 inches diagonally (actual viewable area is less)"). While Plaintiffs concede the existence of the disclaimer, they argue that they "have plausibly alleged that they did not, and a reasonable consumer would not, actually notice this disclosure—because its placement was calibrated to be inconspicuous." Dkt. No. 29 ("Opp.") at 10.

The Court is not persuaded. Plaintiffs include a screenshot of a statement "directly released by Defendant online and repeated at [the] point of sale." FAC ¶ 39. In this image, Plaintiffs cannot ignore the obvious language disclosing that the "actual viewable area is less" than when measured as a "standard rectangular shape." *See id*. This language appears approximately 10 lines down from the screen display specification. *See id*. The Court does not find the disclaimer "inconspicuous," given its proximity to the screen dimension representation and its relative size. *See Freeman*, 68 F.3d at 289 (rejecting argument that a reader would ignore the qualifying language in small print when "[t]he qualifying language appears immediately next to the representations it qualifies and no reasonable reader could ignore it"); *see also Bobo*, 2015 WL 13102417, at *4 ("A plaintiff cannot pursue a claim based on a statement that can only be misleading when the information surrounding it is ignored.").

Plaintiffs also allege that the advertisements reproduced in paragraphs 8 and 14 contained an asterisk or footnote at the end of the statement disclosing the screen size dimension. FAC ¶¶ 8 ("Super Retina HD display 5.8 [inches] (diagonal) all-screen OLED*"), 14 ("5.8 [inches] Super Retina custom OLED display [FN1]"). And Plaintiffs' allegations admit that the accompanying footnote in the advertisement at paragraph 14 discloses, "at the bottom of the webpages," that the "phones' actual screen area is less than indicated by the diagonal measurements." *Id*. ¶ 67.[2] Plaintiffs assert, in conclusory fashion, that the footnote is "small and obscure." *Id*. But Plaintiffs fail to describe the relative size or placement of the footnote with sufficient particularity for the

---

[2] As the Court noted earlier, the FAC fails to explain whether the asterisk in paragraph 8 links to explanatory text, and if so, what the text communicates and where it is located. However, Plaintiffs appear to concede that the explanatory footnote described in paragraph 67 corresponds to the asterisk in paragraph 8. *See* Opp. at 10.

Court to assess whether the footnote was inconspicuous. Instead of including or attaching as exhibits the complete webpages, Plaintiffs cite to hyperlinks, some of which are broken. *See id*. ¶ 67 n.17. For the Court to determine whether any disclaimer is "small and obscure," Plaintiffs must attach or include the content of the hyperlinks in any amended complaint they may file.

Plaintiffs also argue that the disclosure is insufficient because the asterisk (or footnote) is "adjacent to either 'OLED' (screen comparison app) or 'Super Retina custom OLED display' (product page)" and not "to the actual screen dimensions that the disclosure supposedly qualifies." Opp. at 10. A reasonable consumer, Plaintiffs contend, "would assume that the asterisk referenced additional information about the new OLED technology … not about the Products' screen dimensions." *Id*. But an asterisk or footnote expressly tells the consumer to look for supplemental information concerning the statement immediately preceding it. *Dinan*, 2019 WL 2327923, at *7 ("the asterisk directly informs the consumer that he should be aware that he needs to look elsewhere on the package before applying his own assumptions"). That the asterisk or footnote is placed at the end of the statement and not directly next to "5.8 inches" is inconsequential. It would not be sensible for a reasonable consumer to simply assume the supplemental information would not apply to the preceding statement in its entirety and therefore choose to ignore it (and in practice, footnotes are commonly placed at the end of a sentence). Accordingly, a reasonable consumer could not be deceived by the iPhone Products' screen size representation, given the qualifying language expressly notifying the consumer that the actual screen area is less than indicated.

Given these disclaimers, the Court is doubtful that Plaintiffs can plead that the representations concerning screen size were misleading under the CLRA, UCL, FAL, and California common law fraud. However, given the Ninth Circuit's clear direction on this point and Federal Rule of Civil Procedure 15(a)'s mandate that leave be freely given, the Court **GRANTS** Defendant's motion to dismiss **WITH LEAVE TO AMEND**.

### ii. Pixel Count Representations

Defendant first argues that Plaintiffs' general allegations that they saw "Apple marketing materials" are insufficient to satisfy Rule 9(b). Mot. at 8. According to Defendant, Plaintiffs must

8

specify "which particular marketing materials they relied upon … including when they were exposed to them, which ones they found material, who made the statements, or when they were made." *Id*.

Contrary to Defendant's urging, Plaintiffs have pled enough specific facts about Apple's misrepresentations to survive a motion to dismiss, even under Rule 9(b)'s heightened pleading standard. Although Plaintiffs strew examples of different advertisements in a not-entirely clear manner throughout the FAC, *see* FAC ¶¶ 4, 5, 8, 13, 14, 39, the FAC does allege which advertisements Plaintiffs allegedly saw. *See id*. ¶¶ 26 (Plaintiff Sponchiado viewed advertisement in December 2017 "similar to the [screen comparison app] in ¶ 8 above"), 29 (Plaintiff Davis exposed to advertisements online in September 2018 "as reproduced above in ¶¶ 13, 14"). Importantly, the FAC discloses the particular statements at issue: Plaintiff Sponchiado relied on the representation that the iPhone X had an image resolution of 2436x1125, *see id*. ¶ 26 (citing *id*. ¶ 8), and Plaintiff Davis relied on the representation that the iPhone XS Max had an image resolution of 2699x1242, *see id*. ¶ 29 (citing *id*. ¶ 14).

Defendant further argues that Plaintiffs' pixel resolution claims cannot survive because Defendant made no representations regarding subpixels. Mot. at 13; Dkt. No. 30 ("Reply") at 10. However, Plaintiffs do not allege that Defendant misrepresented the number of subpixels. Rather, Plaintiffs' theory is that Defendant misrepresented the number of pixels because the disclosed count is not representative of "true pixels." FAC ¶¶ 42–51. The FAC alleges that the pixel count includes pixels which "share fractions of subpixels with adjacent pixels," meaning that they cannot be "true pixels." *Id*. ¶¶ 42–51. Because the pixel count is not an accurate count of the number of true pixels, Plaintiffs allege that Defendant's representation deceives reasonable consumers into believing that the screens "provide the same clarity as would RGB screens of the advertised resolution." *Id*. ¶¶ 34, 51.

Whether a misrepresentation would mislead a reasonable consumer is generally a question of fact not suited for resolution at this stage. *See Williams*, 552 F.3d at 939. Defendant does not explain why Plaintiffs' understanding of the pixel count is unreasonable as a matter of law. *See Dickey v. Advanced Micro Devices, Inc.*, No. 15-CV-04922-HSG, 2017 WL 2572582, at *3 (N.D.

Cal. June 14, 2017). Construing the pleadings in the light most favorable to Plaintiffs, Plaintiffs have plausibly pled that it is "probable" a significant portion of the targeted consumers "acting reasonably in the circumstances" could be misled by Apple's pixel count representations. *See Lavie*, 105 Cal. App. 4th at 508. Whether Plaintiffs' theory of the pixel count is correct (*i.e.*, whether the count resolution includes "false pixels") is an issue properly addressed at the summary judgment stage.

### B. New York General Business Law Claims

The FAC also alleges that Apple violated §§ 349 (Unfair Trade Practices) and 350 (False Advertising) of the New York General Business Laws ("NY GBL"). FAC ¶¶ 123–46. Section 349 prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce," and § 350 specifically prohibits false advertising. N.Y. Gen. Bus. Law §§ 349, 350. Similar to California law, a reasonable consumer test applies to the NY GBL claims. *See Cohen v. JPMorgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (alleged deceptive act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances"); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017) (same).[3]

Defendant argues that the NY GBL claims fail for the same reasons as the fraud-based claims under California law. Mot. at 16. The Court agrees that Plaintiffs' NY GBL (and New York common law fraud) claims based on the alleged misrepresentation of the screen size fail because of the disclaimer. This conclusion accords with decisions applying New York law. *See Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("under certain circumstances, the

---

[3] Rule 9(b) applies to common law fraud claims under New York law. *See Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 WL 5372794, at *15 (E.D.N.Y. Sept. 26, 2016). But the Court notes that there is a split in authority as to whether Rule 9(b) applies to the NY GBL claims, although recent decisions from this district have held that Rule 9(b) does not apply to such claims. *See, e.g.*, *Clark v. Hershey Co.*, No. C 18-06113 WHA, 2019 WL 913603, at *5 (N.D. Cal. Feb. 25, 2019) ("Claims under New York General Business Law § 349 and § 350 are not subject to the … requirements of FRCP 9(b)"); *Zheng-Lawson v. Toyota Motor Corp.*, No. 17-CV-06591-BLF, 2018 WL 6592783, at *4 (N.D. Cal. Dec. 13, 2018) (Rule 9(b) does not apply to claims under NY GBL § 349); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 996 (N.D. Cal. 2016) ("Unlike the UCL, 'an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), but need only meet the bare-bones notice-pleading requirements of Rule 8(a).'" (citing *Pelman ex rel. Pelman v. McDonald's Corp*, 396 F.3d 508, 511 (2d Cir. 2005))). In any event, the standard applied makes no difference here, given that the Court has found the allegations satisfy Rule 9(b).

presence of a disclaimer or similar clarifying language may defeat a claim of deception"); *Nelson*, 246 F. Supp. 3d at 676 (granting motion to dismiss because "every single representation Plaintiff pleaded reliance on, across every medium, is accompanied by [qualifying language] indicating the beer is brewed in the United States"). For the reasons already discussed, the Court **GRANTS** Defendant's motion to dismiss the NY GBL and New York common law fraud claims premised on the alleged screen size misrepresentation. [4] *See* Section III(A)(i), *supra*. As to Plaintiffs' misrepresentation claims based on the pixel resolution, the Court **DENIES** Defendant's motion for the same reasons discussed previously. *See* Section III(A)(ii), *supra*.

### C. Standing to Pursue Nationwide Class Action

Defendant argues that Plaintiff Davis may not assert claims under California law because she is a New York resident who purchased her iPhone online. Mot. at 6. Further, Defendant contends that Plaintiffs cannot allege claims under the laws of states in which no Named Plaintiff resides. *Id.* at 7 (citing FAC ¶ 17). Plaintiffs argue that this is an issue more properly addressed at the class certification stage. Opp. at 5. While the Ninth Circuit has not addressed this exact issue, the majority of courts in this district have held that in a putative class action, claims arising under the laws of states in which no named plaintiff resides should be dismissed for lack of standing at the motion to dismiss stage. *See Hindsman v. Gen. Motors LLC*, No. 17-CV-05337-JSC, 2018 WL 2463113, at *15 (N.D. Cal. June 1, 2018); *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1175 (N.D. Cal. 2017); *Corcoran v. CVS Health Corp., Inc.*, No. 15-CV-3504 YGR, 2016 WL 4080124, at *2 (N.D. Cal. July 29, 2016); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1069 (N.D. Cal. 2015).

Plaintiffs contend that whether to dismiss claims asserted under the laws of states in which

---

[4] Plaintiffs' theory of the allegedly camouflaged notch, which only Plaintiff Davis asserts, fails given that Plaintiffs admit that some of the iPhone images "might suggest the presence of a notch." *See* FAC ¶ 66. But Plaintiffs argue that "reasonable consumers would not scroll down" to see the images. Opp. at 12 (citing FAC ¶ 66). The Court rejects Plaintiffs' argument. Plaintiff Davis cannot pursue a claim that the advertisement is misleading due to her own choice to ignore the surrounding information. *See Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 391 (E.D.N.Y. 2017) (dismissing §§ 349 and 350 claims because, considering the "marketing as a whole," a reasonable consumer could not be misled when the alleged misrepresentation was qualified by a visible disclosure statement); *see also Bobo*, 2015 WL 13102417, at *5.

no named plaintiff resides is a "matter of discretion" for the Court, and Defendant "has not given the Court any particular reason to strike the claims made on behalf of non-New York and non-California class members." Opp. at 5–6. But it is Plaintiffs who proffer no reason the Court should defer consideration of the standing issue to the class certification stage. Here, there are only two Named Plaintiffs from two states purporting to assert claims under the laws of the District of Columbia and forty-eight other states. *See* FAC ¶ 17. The claims in this case involve at most the laws of two jurisdictions, California and New York. Deferring consideration of the standing analysis until the class certification stage would permit Plaintiffs, who have no connection to the forty-nine other jurisdictions, to embark on lengthy nationwide discovery. *See Johnson*, 272 F. Supp. 3d at 1175. Plaintiffs acknowledge as much, but assume, in conclusory fashion, that providing nationwide discovery "would not create any logistical nightmares" for Defendant. Opp. at 5. The Court disagrees, as the number of claims from the other forty-nine jurisdictions "is vast related to the claims to which the named Plaintiffs indisputably have standing." *See Carrier IQ*, 78 F. Supp. at 1074. Thus, conducting nationwide discovery would impose a significant burden on Defendant. *Cf. In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1160 (D. Minn. 2014) (deferring the standing analysis to class certification stage because the case was not one "where a single named plaintiff asserts the laws of a multitude of states in which that plaintiff does not reside. Rather, there are 114 named Plaintiffs who reside in every state in the union save four and the District of Columbia.").

Accordingly, the Court **DISMISSES** the claims purportedly brought under the laws of jurisdictions other than California and New York.[5]

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's motion to dismiss with respect to claims based on the alleged screen size misrepresentation **WITH LEAVE TO**

---

[5] Under California's choice of law rules, the Court finds that Plaintiff Davis may not assert claims under California law, as the FAC does not plead that she saw the advertisements or purchased her iPhone Product in California. *See* FAC ¶¶ 29–30; *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) (dismissing plaintiff's individual claims asserted under California law, because plaintiff failed to identify the state in which he purchased the product but conceded it was not California).

12

**AMEND.** Further, the Court **DISMISSES** the claims on behalf of putative class members from jurisdictions other than California and New York **WITHOUT PREJUDICE.** The Court **DENIES** the motion to dismiss with respect to the remaining claims based on the alleged pixel count misrepresentation. Any amended complaint must be filed within 21 days of the date of this order. Plaintiffs may only amend their current claims and may not add new claims or parties in their second amended complaint.

**IT IS SO ORDERED.**

Dated: 11/18/2019

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge